UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR FRIEDMAN,

    Petitioner,

v.

JONATHAN HEMINGWAY, *Warden*,

    Respondent.

Case No. 21-10185
Honorable Laurie J. Michelson

**OPINION AND ORDER
DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

In 2019, a battery pack and accompanying cord were found in Arthur Friedman's prison cell. He was charged with misconduct, and the hearing officer found him guilty. The penalty was, among other things, the loss of 41 days of good-time credit. Because the hearing officer's decision extends Friedman's time in prison, he petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241.

As will be explained, the code Friedman was found to have violated is not unconstitutionally vague as applied to a battery pack and accompanying cord, the hearing officer's determination is supported by some evidence, and Friedman was given all the process he was due. Thus, the Court will not grant a writ.

I.

On October 16, 2019, while Friedman was incarcerated at the Federal Correctional Institution in Oxford, Wisconsin, a corrections officer searched Friedman's cell and discovered a cell phone battery pack and accompanying cord

concealed in the light fixture. (ECF No. 7-3, PageID.100.) Although Friedman shared a cell, according to the corrections officer, Friedman stated that the items were his. (*Id.*) The officer subsequently charged Friedman with a Code 108 offense. (*Id.*) Code 108 refers to the "[p]ossession . . . of a hazardous tool," including "portable telephone, pager, or other electronic device." *See* 28 C.F.R. § 541.3, Table 1.

An investigation was performed, and Friedman told the Unit Disciplinary Committee, "I don't have a cell phone. I didn't know I couldn't have it." (ECF No. 7-3, PageID.101.) The committee referred the matter to a disciplinary hearing officer. (*See id.*)

The hearing was held in November 2019. (ECF No. 7-6.) The disciplinary hearing officer considered all the evidence, including the incident report, Friedman's statements before the disciplinary committee, photographs provided of the incident, and Friedman's written statement of the facts. (ECF No. 7-6, PageID.104–105.) In his written statement, Friedman recounted his interaction with the corrections officer who discovered the battery pack. Friedman recalled telling the officer that he "did not have a cell phone" and that the "power bank was going to be used for [an] e-cigarette and MP3 player." (ECF No. 7-6, PageID.105.) Friedman's written statement also informed the disciplinary hearing officer that he "disagree[d] that a . . . USB Power Bank is any of the things described in Rule 108. It is too small to charge a cell phone and it does not fit the definition, description or application of hazardous tool in the context of Rule 108." (ECF No. 7-6, PageID.106.)

In January 2020, the disciplinary hearing officer issued a report finding that Friedman had violated Code 199 most like Code 108. (ECF No. 7-6, PageID.104.) The report explained, "The [disciplinary hearing officer] considered your claim this does not qualify as a Code 108; however, the DHO advised you that the U[SB] cord and charging pack do meet the elements of Code 199 Most Like 108, they are cellphone accessories and are other electronic devices." (ECF No. 7-6, PageID.107.) In relevant part, Code 199 is a catch-all provision for "[c]onduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act." 28 C.F.R. § 541.3, Table 1. "This charge is to be used only when another charge of Greatest severity is not accurate. The offending conduct must be charged as 'most like' one of the listed Greatest severity prohibited acts." *Id.* In the end, the hearing officer imposed 90 days of commissary, telephone, and visiting restrictions, as well as a loss or disallowance of 41 days of good-time credit. (ECF No. 7-6, PageID.107.)

Friedman appealed the hearing officer's decision to a regional director. He claimed that a power bank is not a cell phone or electronic communications device and that "[a] USB cord can be used for a variety of things such as a commis[s]ary[-]purchased MP3 player." (ECF No. 7-7, PageID.109.) Friedman also claimed that the disciplinary hearing officer's report was delivered months late and that Code 199 most like Code 108 was incorrectly applied to the incident. (ECF No. 7-7, PageID.108–110.)

3

The regional director denied Friedman's appeal. "Since the item found was an accessory to an electronic device," the director wrote, "the Code #199, most like, Code #108, is the more appropriate charge." (ECF No. 7-7, PageID.112.) Regarding the timeliness of the hearing officer's report, the regional director stated that, even though a hearing officer's report ordinarily should be delivered within 15 working days of the decision, the late delivery in Friedman's case did not hinder Friedman's ability to appeal the decision. (*Id.*) The regional director also acknowledged certain administrative errors in the hearing officer's report and attached a copy of the hearing officer's amended report. (*Id.*; *see also* ECF No. 7-8, PageID.117.) It appears that on page one of the hearing officer's original report, both Code 108 and Code 199 most like Code 108 were indicated, but later in the original report, only Code 108 was indicated. (*Compare* ECF No. 7-6, PageID.104, *with id.* at PageID.107.) The amended report indicates Code 199 most like Code 108 in both places. (*Compare* ECF No. 7-8, PageID.117, *with id.* at PageID.120.)

Friedman appealed the regional director's decision to the Office of Inmate Appeals, the third and final step in the Bureau's administrative remedy procedure. The regional director's decision was affirmed. (*See* ECF No. 7-7, PageID.116.)

In January 2021, Friedman filed his pro se habeas corpus petition. He wants the Court to reverse the hearing officer's sanctions and to restore the 41 days of good time that he forfeited due to his misconduct in prison. (*See* ECF No. 1, PageID.8, 15.)

4

II.

It appears that Friedman's pro se petition raises three claims under the Due Process Clause: (1) Code 108 and Code 199 are so vague that an ordinary person would not know that the battery pack and cord fell within those codes' definitions, (2) the hearing officer's findings were arbitrary and not supported by the evidence, and (3) his procedural rights were violated because the hearing officer supplied his or her report months late. The Court addresses these claims in that order.

A.

Friedman claims that Code 108 is unconstitutionally vague and Code 199 "is even more broad." (ECF No. 1, PageID.11, 15.) As stated, Code 108 prohibits "[p]ossession . . . of a hazardous tool (tools most likely to be used in an escape or escape attempt . . . or those hazardous to institutional security or personal safety; e.g., . . . portable telephone, pager, or other electronic device)." *See* 28 C.F.R. § 541.3, Table 1. And, as also stated, Code 199 prohibits "[c]onduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act." *Id.* Friedman asserts that an ordinary person reading these codes (or the BOP codes in general) would not infer that possessing a battery pack and accompanying cord would subject them to a "Greatest" severity charge. (*See* ECF No. 1, PageID.11; ECF No. 8, PageID.123.) He points out that the BOP codes do not state that a "plain ordinary universal cord" that can "be used on almost anything" is an electronic device. (ECF No. 8, PageID.123.) Further, Friedman argues that "Moderate" severity codes, Code 305 or

5

331, are the better fit for possession of a battery pack and cord. (ECF No. 1, PageID.12; ECF No. 7-6, PageID.106.)

Friedman's vagueness argument is not frivolous. A battery pack and cord might not be interpreted as an "other electronic device" when that phrase is juxtaposed against the two terms that immediately precede it in Code 108: "portable telephone" and "pager." And Friedman says that MP3 players may be purchased at the commissary; he thus implies that a similar device for charging an MP3 player could be possessed without violating Code 108 or Code 199.

That said, Friedman's vagueness challenge fails.

Prison regulations do not need to be as clear as criminal statutes. "Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions." *Wolfel v. Morris*, 972 F.2d 712, 717 (6th Cir. 1992) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 310 (3rd Cir. 1974)); *accord Hicks v. Fed. Bureau of Prisons*, No. 16-3907, 2017 WL 3468368, at *2 (6th Cir. June 5, 2017).

Codes 108 and 199 provided fair enough warning that a battery pack and accompanying cord were prohibited. Those two items (or very similar items) can be used to charge a cell phone. In other words, Friedman's battery pack and cord (or very similar items) enable an item that is expressly prohibited by Code 108 ("portable telephone"). *See Douglas v. Zickefoose*, No. 11-406, 2012 WL 266364, at *14 (D.N.J. Jan. 27, 2012) ("As to whether the cell phone charger can be considered

6

a hazardous tool like a cell phone under Code 108, the DHO found that a cell phone charger is an essential charging component to a cell phone to keep it operational."). Thus, Code 108 and 199 clear the lower fair-notice bar for prison regulations. *See Swoll v. Terris*, No. 2:19-CV-11218, 2019 WL 6339818, at *3 (E.D. Mich. Nov. 27, 2019) ("It is easy to conclude that one could infer from Code 108's language that a cell phone charger would be a tool considered 'hazardous to institutional security.'").

The Court will not grant Friedman a writ based on his claim that Codes 108 and 199 are unconstitutionally vague.

**B.**

Friedman makes a number assertions about "[v]ague arbitrary facts" (ECF No. 1, PageID.7), "facts that are arbitrary, vague or incorrect" (*id.* at PageID.11), and "arbitrary conclusions administered by the [DHO]" (*id.*). He also argues that there was insufficient evidence to support the hearing officer's determination that he violated Code 108 or Code 199 most like Code 108. (ECF No. 1, PageID.7.) As to the cord specifically, he points out that prison officials continue to refer to it as a USB cord, when, in fact, it was for a "trulinks" computer system and could be used with the MP3 player available in the commissary. (ECF No. 1, PageID.14.)

The loss of good-time credits involves a protected liberty interest and must comport with due process. *See Sandin v. Conner*, 515 U.S. 472, 477–78 (1995). When prison administrators decide to revoke good-time credits, "the requirements of due process are satisfied if some evidence supports the decision." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). "The

7

fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* "Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, *see Jackson v. Virginia*, 443 U.S. 307 (1979), nor any other standard greater than some evidence applies in this context." *See id.* (internal citations omitted).

Here, there is "some" evidence to support the decision of the disciplinary hearing officer. Friedman admitted to the officer who searched his cell that the items discovered in the light fixture belonged to him. As for whether the battery pack and cord fit the definition of Code 199 most like Code 108, the hearing officer found that the "[US]B cord and charging pack" were "cellphone accessories and are other electronic devices." (ECF No. 7-6, PageID.106.) That determination is supportable: even if the exact items that Friedman possessed were for e-cigarettes or an MP3 player, it was not arbitrary or completely unsupportable for the hearing officer to find that they were cellphone accessories. And while Code 108 only expressly prohibits cellphones, Code 199 is for "[c]onduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act," so Code 199 could include cellphone accessories. In all, "some" evidence supports the hearing officer's Code 199 most like Code 108 determination. *See Hill*, 472 U.S. at 455.

In resisting this result, Friedman argues that under *Sandin v. Conner*, 515 U.S. 472 (1995), the hearing officer's findings needed to be supported by

8

"substantial" evidence. (ECF No. 8, PageID.123.) But *Sandin* does not impose that requirement. There, the Ninth Circuit Court of Appeals found that because a prison regulation required a misconduct charge to be supported by "substantial" evidence, the regulation created a liberty interest (protected by the Due Process Clause) in not being found guilty absent substantial evidence. *Id.* at 477. The Supreme Court held that the Due Process Clause was not implicated because the prisoner's penalty—segregated confinement—"did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. Thus, *Sandin* does not require a hearing officer's findings to be supported by "substantial" (as opposed to "some") evidence. And the Sixth Circuit has recently reiterated that "a finding of guilt that results in a loss of good-time credits must be 'supported by some evidence in the record.'" *Williams v. Emerson*, No. 20-1271, 2020 U.S. App. LEXIS 39903 at * 4 (6th Cir. Dec. 18, 2020) (order) (quoting *Hill*, 472 U.S. at 454)).

The Court will not grant a writ based on Friedman's claim that the hearing officer's determinations were arbitrary or lacked evidentiary support.

## C.

Friedman also claims that his procedural rights under the Due Process Clause were violated. In particular, he alleges that the hearing officer's report was late by several months. (ECF No. 1, PageID.11.) He also argues that he was "stripped of his ability to appeal his incidental conduct." (ECF No. 8, PageID.123.)

9

When a prisoner is faced with a loss of good-time credits, due process requires (1) written notice of the charge at least twenty-four hours before a hearing on the charge, (2) an opportunity to call witnesses and to present documentary evidence at the hearing when doing so will not be unduly hazardous, and (3) a written statement by the factfinder regarding the evidence relied on and the reasons for the disciplinary action taken. *See Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974).

Here, those requirements were satisfied. The incident occurred on October 16, 2019, and the incident report was delivered to Friedman the next day. (ECF No. 7-3, PageID.100.) The disciplinary committee held a hearing five days later (*id.*), and the hearing before the disciplinary hearing officer was held more than two weeks later (ECF No. 7-6, PageID.104). So Friedman received notice of the charge more than twenty-four hours before the hearings. As for the second requirement, Friedman was offered an opportunity to present witnesses and documentary evidence to the hearing officer. (ECF No. 7-4; ECF No. 7-6, PageID.104; ECF No. 7-6, PageID.105–106.) The third and final due process requirement was satisfied, too, because Friedman was given a copy of the hearing officer's written report, which contained his or her findings, a summary of the evidence relied on, and the reasons for the disciplinary action taken. (ECF No. 7-6, PageID.105–107.)

As for the late delivery of the hearing officer's report, Friedman points to 28 C.F.R. § 541.17(g), which previously stated, "The DHO shall give the inmate a written copy of the decisions and disposition, *ordinarily* within 10 days of the DHO's decision." *See also* Federal Bureau of Prisons, Program Statement 5270.09 (eff. Aug.

10

1, 2011) ("The DHO gives the inmate a written copy of the decisions and disposition, *ordinarily* within 15 work days of the decision."). Not only was § 541.17 removed from the Code of Federal Regulations in 2011, which is well before Friedman was charged with possession of the power bank, but "ordinarily" is not "always."

In any event, Friedman has not adequately explained how he was prejudiced from the hearing officer's failure to provide a report within 10 or 15 days. On appeal, the regional director considered the hearing officer's original report and the amended report. (ECF No. 7-7, PageID.112.) And Friedman has not explained how his appeal to the regional director would have been stronger had he received the report sooner. *See Staples v. Chester*, 370 F. App'x 925, 929–30 (10th Cir. 2010) (finding that "the DHO's failure to give an inmate a written copy of its decision within ten days should not entitle an inmate to habeas relief so long as the delay had no prejudicial effect on an administrative appeal"); *Marino v. Walton*, No. 11-CV-13692, 2011 WL 6945738, at *3 (E.D. Mich. Dec. 6, 2011) (same, collecting cases).

Accordingly, the Court finds that Friedman's procedural due process rights were not violated.

### III.

For the reasons given, the Court DENIES Friedman a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

The Court also DENIES leave to appeal this decision in forma pauperis, because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

11

Friedman may apply to the Court of Appeals for permission to appeal the Court's decision in forma pauperis.

Friedman is not required to move for a certificate of appealability because this is a denial of a case "properly brought under § 2241, where detention is pursuant to federal process." *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004).

SO ORDERED.

Dated: May 4, 2022

                                        s/Laurie J. Michelson
                                        LAURIE J. MICHELSON
                                        UNITED STATES DISTRICT JUDGE